*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

*In re* D D MOORE, Minor.

UNPUBLISHED
January 25, 2024

No.  365146
Wayne Circuit Court
Family Division
LC No.  22-000161-NA

*In re* N L THOMAS, Minor.

No.  365147
Wayne Circuit Court
Family Division
LC No.  22-000142-NA

*In re* A D GRAYS, Minor.

No.  365148
Wayne Circuit Court
Family Division
LC No.  22-000146-NA

*In re* D D L THOMAS, Minor.

No.  365149
Wayne Circuit Court
Family Division
LC No.  22-000159-NA

*In re* M D M THOMAS, Minor.

No.  365150
Wayne Circuit Court
Family Division
LC No.  22-000160-NA

-1-

Before:  GADOLA, C.J., and MURRAY and YATES, JJ.

PER CURIAM.

In these five consolidated appeals,[1] respondent-father appeals as of right the orders terminating his parental rights to his five minor children: DDM, NLT, ADG, DDLT, and MDMT, under MCL 712A.19b(3)(b)(*i*) (sibling of the child has suffered sexual abuse caused by the parent), (g) (parent, although financially able to do so, fails to provide proper care or custody), and (j) (reasonable likelihood child will be harmed if returned to the home of the parent).[2]  Although this is a close case, because of the applicable standard of review, we affirm.

## I.  BACKGROUND

Respondent-father is the father of the children.  Each child has a different mother: DDM's mother is D. Moore; NLT's mother is M. Arrington; ADG's mother is K. Grays; DDLT's mother is G. McClendon-Travis; and MDMT's mother is B. Dozier.  In November 2021, petitioner was notified of allegations that respondent-father sexually abused NLT's half-sister, LMM; respondent-father is not LMM's father.  According to LMM, the abuse began in October 2021, when she was six years old, and occurred when she stayed with NLT at respondent-father's home with NLT, DDLT, and MDMT.  In addition to the sexual abuse allegations, respondent-father has a criminal history including arrests for larceny, MCL 750.356, and obstructing justice, MCL 750.479, a charge for felony forgery, MCL 750.248, and is on probation for carrying a concealed weapon, MCL 750.227.

Petitioner filed individual petitions requesting the trial court take jurisdiction over the children under MCL 712A.2(b)(1) (parent when able to do so neglects to provide proper or necessary support) and (2) (the home because of neglect, criminality, or depravity on the part of the parent is an unfit place to live), and terminate respondent-father's parental rights to the children under MCL 712A.19b(3)(b)(*i*), (g), (j), (k)(*ii*) (parent abused the sibling of the child and the abuse included criminal sexual conduct involving attempted penetration or assault with intent to penetrate), and (k)(*ix*) (parent abused the sibling of the child and the abuse included sexual abuse as that term is defined in section 2 of the child protection law).  The petitions allege it is contrary to the children's welfare to remain in respondent-father's care because he sexually abused LMM, placing the children at risk for threatened harm.  The petition regarding DDM also alleges respondent-father abandoned DDM because respondent-father had not visited him since shortly after his birth and did not financially support him.  Petitioner recommended placing DDM, NLT, ADG, and MDMT with their respective mothers; petitioner did not recommend DDLT be placed with McClendon-Travis because it also sought termination of her parental rights because of unsuitable housing.  The petitions also allege respondent-father is an alcoholic.

---

[1] *In re D D Moore*, unpublished order of the Court of Appeals entered March 7, 2023 (Docket Nos. 365146; 365147; 365148; 364149; 365150).

[2] When referencing DDM, NLT, ADG, DDLT, and MDMT collectively, we will refer to them as "the children."

In February 2022, the trial court separately held preliminary hearings regarding the children. Respondent-father waived a finding of probable cause and made a judge demand, and the trial court authorized the petitions. Petitioner's employee, Leslie Tillman, requested the children be removed from respondent-father's care because his abuse of LMM placed them at risk of harm, and recommended supervised parenting time with respondent-father. Tillman stated DDLT and NLT resided in respondent-father's home at the time the alleged sexual abuse of LMM took place. The trial court authorized the petitions, removed the children from respondent-father's care, and ordered supervised parenting time with respondent-father.

During the adjudication, respondent-father, after being advised of his rights, entered a no-contest plea to the petitions and waived his right to a trial. As part of the factual basis underlying the plea, the trial court admitted a CPS investigative report detailing respondent-father's sexual abuse of LMM. The trial court accepted respondent-father's plea and found there was clear and convincing evidence to establish grounds for jurisdiction under MCL 712A.2b(1) and (2) based on respondent-father's sexual abuse of LMM, and statutory grounds for termination of respondent-father's parental rights. At the end of the hearing, respondent-father's counsel indicated DDM, NLT, ADG, and MDMT had not been brought to parenting time by their mothers, and asked the trial court to order the mothers to comply. Petitioner and the guardian ad litem did not object, and indicated they would speak with the mothers to ensure respondent-father would have his court-ordered supervised parenting time. After the hearing, the trial court entered orders of the adjudication findings, stating based on respondent-father's no contest plea, there were statutory grounds to terminate respondent-father's parental rights under MCL 712A.19b(3)(b)(*i*), and ordered respondent-father to partake in a best interest evaluation at Family Assessment Services. The orders regarding DDM, NLT, ADG, and MDMT state: "Non-respondent mother to cooperate with agency's efforts to facilitate parenting time." The order regarding DDLT indicates he was made a temporary court ward.[3]

In September 2022, the trial court held joint dispositional reviews and best interest hearings. The trial court admitted a report from the Clinic for Child Study. Respondent-father testified he recently lost his employment, but indicated he would likely have employment in October 2022. Respondent-father asserted having housing, healthy bonds with his children, and that he financially provided for them. However, respondent-father also admitted he had not seen DDM since 2017, which he attributed to Moore not allowing him to see DDM. Respondent-father stated he visited with NLT "every weekend to every other weekend," and they had a healthy relationship because NLT was always "excited to see me. He never want[s] to leave me whenever it's time for him to go home." Addressing ADG, respondent-father stated they had a good bond and communicated frequently over the phone. Respondent-father stated he and MDMT had a healthy relationship and they talk "almost every day." Discussing DDLT, respondent-father stated DDLT stayed with him for "[a] little over four years," during which he brought DDLT to school daily, helped with homework, and provided clothing and food. On cross-examination, respondent-

---

[3] In October 2022, the trial court entered amended orders of adjudication, adding "statutory grounds [under] MCL 712A.19b(3)(g) and (j) and [adding] factual findings to support termination of parental rights." The orders of adjudication added specific factual findings regarding the abuse of LMM. All other aspects of the orders remain the same.

father testified that because he had not seen DDM since 2017, he attempted to enforce parenting time "several times," through the Friend of the Court. Respondent-father stated he was consistent with parenting time for all of his children, however, his children had not been consistently brought for parenting time. Respondent-father denied sexually abusing LMM, but admitted he entered a plea supporting the allegations against him. Because of technical issues, the best interest hearings were adjourned.

In October 2022, the trial court held the second best interests hearings. Respondent-father testified again, he entered a no contest plea because he "didn't want to put [LMM] in a position to where something like this can mess with her for the rest of her life[.]" Respondent-father denied drinking alcohol excessively or being an alcoholic. Despite attending all supervised parenting times, respondent-father stated Arrington and Moore never brought NLT and DDM, Grays only brought ADG once, and Dozier brought MDMT three times. Respondent-father claimed he is bonded with his children, loves them, and wants an opportunity to be in their lives. Respondent-father had not been criminally charged for his alleged abuse of LMM and was cooperating with the police investigation.

In December 2022, respondent-father filed an emergency motion to enforce the parenting time orders regarding DDM, NLT, and MDMT. Respondent-father claimed, despite the trial court's orders, that DDM, NLT, and MDMT were not attending parenting time because Moore, Arrington, and Dozier failed to bring them. The guardian ad litem and petitioner requested the trial court either suspend parenting time until it is decided whether it would terminate respondent-father's parental rights or hold its decision regarding respondent-father's motion in abeyance. The trial court ordered a referral "to be made to Assured Family Services for a parenting time evaluation," and continued respondent-father's motion.

During the final best interests hearing, petitioner claimed it would be in the best interests of the children to terminate respondent-father's parental rights based on the Best Interest Clinic report. The guardian ad litem agreed termination was in the best interests of the children because of respondent-father's abuse of LMM. Respondent-father argued termination was not in the best interests of the children because "to terminate the father's rights today would sanction [the] behaviors of the mothers," who ignored the orders for parenting time. Because there was no testimony the interactions were harmful to the children and respondent-father was not given an opportunity to "exhibit his parenting techniques," respondent-father argued the trial court should "take into consideration . . . [respondent-father's] lack of opportunity . . . to visit his children under the circumstances."

The trial court found that despite any bond between respondent-father and his children and the children's placement with relatives, termination was in the children's best interests because of the aggravating circumstance of respondent-father's sexual abuse of LMM, his history of alcohol abuse, criminal history, his current probation for carrying a concealed weapon conviction, and the possibility of future sexual abuse and neglect. Addressing DDM, NLT, and MDMT, the trial court found respondent-father was absent in their lives and there had been no contact between respondent-father and DDM, NLT, and MDMT, however, there was a possibility of future sexual abuse and continuing neglect. Discussing ADG, the trial court found any bond between ADG and respondent-father was outweighed by the risk of harm presented by respondent-father. Regarding DDLT, the trial court stated: "The child is placed with paternal grandparent(s), which is usually a

factor that weighs against termination; however, the substantial risk of harm that the father presents to the child . . . far outweighs the consideration of relative placement." DDM, NLT, ADG, and MDMT were all placed in the care of their respective mothers, while DDLT was placed with petitioner for care and supervision. The order also dismissed as moot respondent-father's emergency motion for parenting time. This appeal followed.

## II. BEST INTERESTS

Respondent-father argues the trial court improperly terminated his parental rights because it was not in the best interests of the children.

## A. STANDARDS OF REVIEW

Termination of parental rights requires findings of statutory grounds for termination and that termination is in a child's best interests. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). Whether termination of parental rights is in a child's best interests must be proven by a preponderance of the evidence. *In re Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). We review a trial court's findings of fact in termination proceedings, including whether termination of parental rights is in a child's best interest, for clear error. *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). A trial court's findings of fact are clearly erroneous if a reviewing court is "definitely and firmly convinced that it made a mistake." *In re Keillor*, 325 Mich App 80, 85; 923 NW2d 617 (2018) (quotation marks and citation omitted). "This Court gives deference to a trial court's special opportunity to judge the weight of the evidence and the credibility of the witnesses who appear before it." *In re TK*, 306 Mich App 698, 710; 859 NW2d 208 (2014) (citation omitted).

## B. ANALYSIS

" 'If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights . . . .' " *In re Olive/Metts Minors*, 297 Mich App at 42, quoting MCL 712A.19b(5). On appeal, respondent-father does not contest whether statutory grounds for termination were adequately established; instead, respondent-father challenges whether termination was in the children's best interests.

In determining whether termination is in a child's best interests:

[T]he focus at the best-interest stage has always been on the child, not the parent. In assessing whether termination of parental rights is in a child's best interests, the trial court should weigh all evidence available to it. Courts may consider such factors as the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. Other considerations include the length of time the child was in care, the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all, and compliance with the case service plan.

[*In re Payne/Pumphrey/Fortson Minors*, 311 Mich App 49, 63-64; 874 NW2d 205 (2015) (quotation marks and citations omitted).][4]

"The trial court may also consider a parent's history of domestic violence . . . the parent's visitation history with the child, the child[]'s well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714. The trial court should also evaluate the risk of harm a child might face if returned to the parent's care. See *In re VanDalen*, 293 Mich App 120, 140-142; 809 NW2d 412 (2011). Further, the "doctrine of anticipatory neglect allows for an inference that a parent's treatment of one child is probative of how that parent may treat other children." *In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020). This applies even when the abused child is a half-sibling of the respondent-parent's child. See *In re Mota*, 334 Mich App 300, 322-323; 964 NW2d 881 (2020). "However, the probative value of such an inference is decreased by differences between the children, such as age . . . ." *In re Kellogg*, 331 Mich App at 259. "[B]ecause a child's placement with relatives weighs against termination under MCL 712A.19a(6)(a), the fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests." *In re Olive/Metts Minors*, 297 Mich App at 43 (quotation marks and citation omitted). The trial court must "decide the best interests of each child individually." *Id*. at 42.

As background to whether the trial court erred in determining that termination of parental rights was in the best interests of each child, we emphasize the following. The record shows respondent-father was employed, had suitable housing, open child support cases for the children, and provided food, clothing, and financial and medical care for them. The record also shows respondent-father pleaded no contest to LMM's allegations of sexual abuse, which included respondent-father sexually abusing LMM on over five occasions where he would wait until his other children were asleep, bring LMM into his bed while naked, and instruct LMM to "squeeze his front part." Respondent-father denied drinking alcohol excessively or having an alcohol problem. However, in the Best Interest Clinic report, he contradicted himself when reporting a history of drinking alcohol daily from ages 23 to 32. Respondent-father has a criminal history, and he "indicated that he is [currently] on probation after being arrested for Carrying a Weapon."

---

[4] Generally, reasonable efforts to reunify the child and family must be made except when cases involve aggravated circumstances under MCL 712A.19a(2). *In re Mason*, 486 Mich 142, 152; 782 NW2d 747 (2010). Under MCL 712A.19a(2)(a), reasonable efforts to reunify the child do not have to be made if "[t]here is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in section 18(1) and (2) of the child protection law, 1975 PA 238, MCL 722.638." MCL 722.638 states, in part: "The department determines that a parent . . . has abused the . . . sibling of the child and the abuse included . . . [c]riminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate." MCL 722.638(1)(a)(*ii*). Although respondent-father indicated he was interested in completing a service plan, the trial court found there were aggravating circumstances present because respondent-father sexually abused LMM. As such, petitioner was not required to make reasonable efforts towards reunification.

Despite indicating that he had no history of domestic violence with the mothers of his children, Moore claimed he was physically abusive toward her when they were together.

Turning to the argument, respondent-father argues that the trial court incorrectly found termination was in the best interests of his children because the trial court did not consider the mothers' failure to bring the children for parenting time, which negatively affected respondent-father's bond with his children. Although it is true the mothers did not comply with the parenting time orders, the evidence supports the trial court's finding that termination was in the best interests of the children.

### DDM

Respondent-father admitted he had not seen DDM since 2017, when he was six months old, and did not have emotional ties to DDM. Although respondent-father attributed this to Moore's refusal to allow respondent-father parenting time with DDM, this evidence supports the trial court's finding that respondent-father lacked a bond with DDM and did not provide him with much, if any, support. Because of this evidence, in addition to respondent-father's sexual abuse of LMM, respondent-father's history of alcohol abuse, and criminal history, the record evidence supports the trial court's finding that termination was in DDM's best interests. The trial court did not err by terminating respondent-father's parental rights to DDM.

### NLT

The record shows LMM was NLT's half-sister, and NLT was present in the home when respondent-father sexually abused LMM. Although respondent-father stated NLT visited with him "every weekend to every other weekend," and they had a healthy relationship, under the doctrine of anticipatory neglect, respondent-father's sexual abuse of LMM is probative of how he would treat NLT, especially considering NLT is similar in age to LMM when respondent-father began sexually abusing her. See *In re Kellogg*, 331 Mich App at 259; *In re MOTA*, 334 Mich App at 322-323. The trial court did not clearly err by finding termination was in NLT's best interests.

### ADG

Although respondent-father reported having a strong bond with ADG and stated they communicated frequently on the phone, Grays reported respondent-father was absent for most of ADG's life. Respondent-father's absence in ADG's life, sexual abuse of LMM, criminal history, and history of alcohol abuse support the trial court's finding that termination was in ADG's best interests. Further, because the trial court found the risk of harm to ADG outweighed any bond with respondent-father, and this Court "gives deference to a trial court's special opportunity to judge the weight of the evidence and the credibility of the witnesses who appear before it," *In re TK*, 306 Mich App at 710, the trial court did not clearly err by finding it was in ADG's best interests to terminate respondent-father's parental rights.

### DDLT

Respondent-father stated he had a strong bond with DDLT, who stayed with him for "[a] little over four years," during which time he brought DDLT to school daily, helped with homework, and provided clothing and food. However, respondent-father sexually abused LMM

while DDLT was staying with respondent-father. Because respondent-father sexually abused LMM while DDLT was in the home, and he has a criminal history and history of alcohol abuse, the trial court did not clearly err by finding termination was in DDLT's best interests. Further, because the trial court expressly found that the risk of harm to DDLT outweighed any bond with respondent-father, and considered DDLT's placement with his paternal grandmother, *In re TK*, 306 Mich App at 710, the trial court did not clearly err by terminating respondent-father's parental rights to DDLT.

**MDMT**

Respondent-father stated he and MDMT had a healthy relationship and a strong emotional bond, and they talked "almost every day." Dozier did "not believe the [sexual abuse] allegations and expressed [feeling] comfortable with her son having contact with [respondent-father]." During the Best Interest Clinic evaluation, Carter observed respondent-father and MDMT interact, stating: "[I]t appeared that their interactions were appropriate as they seemed very happy and excited to spend time together. It was very evident that they shared in a closely attached and affectionate relationship as they communicated well and got along appropriately with each other." In the order terminating respondent-father's parental rights to MDMT, the trial court stated: "Father is absent in his son's life. There has been no contact between the father and the child, [MDMT.]" Based on the record, this factual finding is inaccurate. However, during the best interests hearing, the trial court clearly acknowledged respondent-father and MDMT had a bond, but found termination was in MDMT's best interests regardless of their bond because of respondent-father's abuse of LMM, his criminal history, and history of alcohol abuse. Further, applying the doctrine of anticipatory neglect, because MDMT is similar in age to LMM when respondent-father sexually abused her, we cannot conclude that the trial court clearly erred in finding termination was in MDMT's best interests. As such, while the trial court's order may have inaccurately characterized the relationship between respondent-father and MDMT, the record otherwise supports the trial court's finding. And because this Court gives deference to the trial court's determination that any bond was outweighed by respondent-father's sexual abuse of LMM, respondent-father is not entitled to relief on appeal.

III. CONCLUSION

Because the trial court did not clearly err by finding termination was in the best interests of the children, we affirm.

/s/ Michael F. Gadola
/s/ Christopher M. Murray
/s/ Christopher P. Yates